**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE NATIONAL ARBOR DAY FOUNDATION, | |
| *Plaintiff*, | |
| v. | Case No. _____ |
| UNITED STATES DEPARTMENT OF AGRICULTURE, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| BROOKE ROLLINS, in her official capacity as Secretary of the United States Department of Agriculture, | |
| UNITED STATES FOREST SERVICE, | |
| TOM SCHULTZ, in his official capacity as Forest Service Chief, | |
| *Defendants*. | |

**INTRODUCTION**

1. This action challenges the United States Department of Agriculture's ("USDA") arbitrary and capricious termination of the National Arbor Day Foundation's ("Arbor Day") Urban and Community Trees cooperative agreement (Agreement No. 24-CA-11132544-015) (the "Grant"), a $75,000,000 award funded by the Inflation Reduction Act ("IRA") and administered through the United States Forest Service ("USFS" or "Forest Service") under the Urban and Community Forestry Assistance ("UCFA") program.

2. On February 14, 2025, the USDA Forest Service issued a termination notice stating that Arbor Day's award "no longer effectuates agency priorities regarding diversity, equity, and inclusion programs and activities," citing 2 C.F.R. § 200.340(a)(4) as the basis for termination.

1

3.      The termination letter contained no individualized analysis of Arbor Day's grant activities, no explanation of how the Grant implemented or involved diversity, equity, and inclusion ("DEI") initiatives, no identification of which specific activities were allegedly problematic, and no analysis of why the USDA believed the October 1, 2024 version of 2 C.F.R. § 200.340 applies.

4.      Arbor Day's Grant funds tree planting and related activities in urban and community areas across the United States, including subawards to forty-seven sub-recipients in municipalities located in Montana, Utah, Nebraska, Florida, Georgia, North Carolina, Texas, Virginia, and other states. The Grant advances the precise statutory purposes that Congress directed when it appropriated $1.5 billion for the UCFA program under Section 23003(a)(2) of the IRA, namely "tree planting and related activities" to "reduce carbon dioxide emissions, conserve energy, and improve air quality."

5.      The USDA's termination of the Grant is part of a broader policy, pattern, and practice of unlawfully terminating hundreds of USDA grant awards in response to Executive Orders directing agencies to eliminate funding allegedly related to DEI or climate change. The USDA issued these terminations through minimally edited form letters with no individualized determinations, asserting that awards "no longer effectuate" USDA's new "agency priorities."

6.      This Court has already addressed the lawfulness of USDA's mass termination of UCFA program awards. In *Urban Sustainability Directors Network v. United States Department of Agriculture*, Civ. Act. No. 25-1775 (D.D.C. Aug. 14, 2025), the Court held that the USDA's termination of grants under the same program, by the same agency, using nearly identical form language, was arbitrary and capricious and contrary to statute, and the Court granted the injunctive relief sought by those plaintiffs.

2

7.      Arbor Day's termination letter uses nearly identical form language and suffers from the same deficiencies criticized by the Court in the *Urban Sustainability Directors Network* injunctive relief decision.

8.      Arbor Day has diligently exhausted all available administrative remedies before bringing this action.

9.      On March 11, 2025, Arbor Day submitted a response requesting reconsideration and alternative dispute resolution pursuant to Section N of the Grant. The Forest Service provided no substantive response, advising only on August 12, 2025 that it had "no additional information to share regarding the decision to terminate."

10.     Following the *Urban Sustainability Directors Network* decision on August 14, 2025, Arbor Day demanded reinstatement of the Grant on September 10, 2025. The Forest Service responded on September 29, 2025 that it was reviewing the opinion, but on January 28, 2026, the Forest Service advised that "the Agency determined the decision does not affect awards outside the case" and that "[t]he termination of the cooperative agreement with the Arbor Day Foundation is final."

11.     Any further pursuit of administrative remedies would be futile, as the Forest Service has made clear its position is final, and the termination was made as part of an agency-wide policy and practice pursuant to Executive Orders to eliminate funding with any alleged connection to DEI or climate initiatives.

12.     Arbor Day seeks declaratory and injunctive relief to vacate and set aside Defendants' unlawful termination of the Grant, to restore the Grant and all associated funding, and to prevent Defendants from re-terminating the Grant on the same unlawful basis.

**JURISDICTION AND VENUE**

13.     This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331.

14.     The Court has authority to enter a declaratory judgment and to provide temporary, preliminary, and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure; the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; the All Writs Act, 28 U.S.C. § 1651; and the Court's inherent equitable powers. The APA further authorizes the Court to grant temporary and permanent relief from agency action. *See* 5 U.S.C. §§ 705–706.

15.     This action seeks only equitable relief—specifically, declaratory relief, vacatur of the unlawful termination, and injunctive relief restoring the Grant and prohibiting further unlawful termination.

16.     Plaintiff's claims arise under the Cooperative Forestry Assistance Act, the IRA, and the Uniform Administrative Requirements for Federal Awards (2 C.F.R. Part 200)—sources of law that are statutory and regulatory in nature, not contractual. Accordingly, this action is not "essentially contractual" and does not fall within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act.

17.     Venue properly vests in this Court pursuant to 28 U.S.C. § 1391(e).

**PARTIES**

18.     Plaintiff Arbor Day is a nonprofit organization headquartered in Lincoln, Nebraska dedicated to inspiring people to plant, nurture, and celebrate trees. Arbor Day applied for, and was

4

awarded, a cooperative agreement from the USDA Forest Service (Award No. 24-CA-11132544-015) on December 18, 2023.

19.    Defendant USDA is an agency within the meaning of the APA, 5 U.S.C. § 551(1). USDA operates under the supervision and direction of the Secretary of USDA.

20.    Defendant Brooke Rollins is the Secretary of USDA and is sued in her official capacity only.

21.    Defendant USFS is a subagency of USDA and an agency within the meaning of the APA, 5 U.S.C. § 551(1). USFS operates under the supervision and direction of the Forest Service Chief.

22.    Defendant Tom Schultz is the Forest Service Chief and is sued in his official capacity only.

## FACTUAL BACKGROUND

### A.  The Urban and Community Forestry Assistance Program

23.    In 2022, Congress passed and President Biden signed into law the IRA, Pub. L. No. 117-169, 136 Stat. 1818 (2022).

24.    In Subtitle D, Section 23003(a)(2) of the IRA, Congress appropriated $1,500,000,000 to USDA, to remain available until September 30, 2031, "to provide multiyear, programmatic, competitive grants to a State agency, a local governmental entity, an agency or governmental entity of the District of Columbia, an agency or governmental entity of an insular area . . . an Indian Tribe, or a nonprofit organization through the Urban and Community Forestry Assistance program established under section 9(c) of the Cooperative Forestry Assistance Act of 1978 (16 U.S.C. 2105(c)) for tree planting and related activities." Pub. L. No. 117-169, 136 Stat. 1818 at § 23003(a)(2) (2022).

5

25.    These appropriated funds are administered through the USFS.

26.    In creating the UCFA program, Congress found, among other things, that "tree plantings and ground covers such as low growing dense perennial turfgrass sod in urban areas and communities can aid in reducing carbon dioxide emissions, mitigating the heat island effect, and reducing energy consumption, thus contributing to efforts to reduce global warming trends." 16 U.S.C. § 2105(a)(5).

27.    The statutory purposes of the UCFA program include "implement[ing] [] tree planting program[s] to complement urban and community tree maintenance and open space programs and to reduce carbon dioxide emissions, conserve energy, and improve air quality in addition to providing other environmental benefits." 16 U.S.C. § 2105(b)(5).

28.    The statutory purposes further include "improv[ing] understanding of the benefits of preserving existing tree cover in urban areas." 16 U.S.C. § 2105(b).

29.    The UCFA program authorizes the Secretary of Agriculture to provide assistance to states and nonprofit organizations "to plan urban forestry programs and to plant, protect, maintain . . . trees in open spaces, greenbelts . . . and residential developments in urban areas." 16 U.S.C. § 2105(c).

30.    On April 12, 2023, USFS issued a Notice of Funding Opportunity ("NOFO") to initiate the process of distributing these IRA funds to qualified applicants through a competitive process.

31.    The NOFO's section on "Legislative Authority and Funding Priorities" reiterates that the funds must be used for projects in furtherance of the priorities listed in IRA Section 23003(a)(2). It further provides that the program prioritizes projects "working to support disadvantaged communities experiencing low tree canopy and environmental justice," as well as

"locally led conservation and park projects in communities that disproportionately lack access to nature and its benefits."

32.     Following the application process, USFS announced more than $1 billion in awards to 385 community-based organizations, local and state governments, and other entities in all 50 states. The agency also allocated $250 million in funding directly to state and territory forestry agencies to administer awards.

33.     The projects awarded under the program were all dedicated to tree planting and maintenance, workforce development, wood utilization, extreme heat mitigation, restoration and resilience strategies, and community planning.

### B. Arbor Day's Grant Award

34.     Arbor Day entered into a cooperative agreement with the USDA Forest Service (Award No. 24-CA-11132544-015) on December 18, 2023. The Grant was awarded in the initial amount of $50,000,000, with a subsequent modification adding $25,000,000, for a total award value of $75,000,000.

35.     The Grant was made under the authority of the Cooperative Forestry Assistance Act (P.L. 95-313, 16 U.S.C. § 2105) and Public Law 117-169 (the IRA), Subtitle D, Section 23003(a).

36.     The period of performance for the Grant runs through November 30, 2028.

37.     The Grant requires Arbor Day to administer subawards to forty-seven sub-recipients identified in the Project Narrative, with more than $28,000,000 passed through to predetermined municipalities in states including Montana, Utah, Nebraska, Florida, Georgia, North Carolina, Texas, Virginia, and others.

38.    Arbor Day's programs funded by the Grant are focused on planting and maintaining healthy urban forests.

39.    As Arbor Day stated in its March 11, 2025 response to the termination, the Grant's programs are "not about diversity, equity, and inclusion programs as commonly thought of," and the trees planted under the Grant "capture stormwater and replenish groundwater, help clean the air, and help cool air and surfaces in urban areas during heat waves."

40.    The Grant's applicable termination provisions are found in Section P, which references 2 C.F.R. § 200.340. The November 12, 2020 version of 2 C.F.R. § 200.340 was in effect when the Grant was issued.

### C.  Regulations Applicable to Termination of Awards

41.    The Office of Management and Budget's ("OMB") Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards ("Uniform Guidance") at 2 C.F.R. Part 200 provides the rules and requirements for federal agencies' administration of, and recipients' and sub-recipients' management of, grant awards.

42.    USDA has formally adopted the Uniform Guidance as its "policies and procedures for uniform administrative requirements, cost principles, and audit requirements for Federal awards." 2 C.F.R. § 400.1.

43.    The Uniform Guidance provides several procedural safeguards that protect the interests of grant recipients from ambiguous, vague, or shifting requirements, including limiting the bases for termination. *See* 2 C.F.R. §§ 200.211, 200.340–343, 200.472.

44.    Before awarding a grant, federal agencies, including USDA, are required to: (1) give public notice of the funding opportunity that includes the goals and priorities of the program; (2) publicly solicit applications; (3) conduct a "merit review process"; and (4) only select

"recipients most likely to be successful in delivering results based on the program objectives." 2 C.F.R. §§ 200.204–200.205.

45. As for termination provisions in the Uniform Guidance, under the November 12, 2020 version of 2 C.F.R. § 200.340, a federal award could be terminated in whole or in part by the awarding agency: (1) if a non-Federal entity fails to comply with the terms and conditions of a Federal award; (2) if an award no longer effectuates program goals or agency priorities; (3) by mutual consent; (4) by the recipient upon written notification to the federal agency; or (5) pursuant to termination provisions in the award.

46. Critically, the November 12, 2020 version of 2 C.F.R. § 200.340 provides that "[a] Federal awarding agency should ***clearly and unambiguously*** specify termination provisions applicable to each Federal award." 2 C.F.R. § 200.340(b) (emphasis added).

47. This requirement is repeated in the current version of the Uniform Guidance, which continues to require that federal agencies "clearly and unambiguously" identify termination provisions in an award's terms and conditions, and limits termination based on an award no longer serving program goals or agency priorities that the particular award was originally intended to further.

48. The preamble to the final rule for the 2020 Uniform Guidance restates this requirement: "Federal awarding agencies must clearly and unambiguously articulate the conditions under which a Federal award may be terminated in their applicable regulations and in the terms and conditions of Federal awards." 85 Fed. Reg. at 49,507; *see* 2 C.F.R. § 200.340(b) (2021).

49. The stated intent of the 2020 Uniform Guidance is for "Federal awarding agencies" to "prioritize ongoing support to Federal awards that meet program goals." 85 Fed. Reg. at 49,507. OMB provided examples of circumstances in which an agency's termination pursuant to 2 C.F.R.

9

§ 200.340(a)(2) (2021) would be appropriate: "if additional evidence reveals that a specific award objective is ineffective at achieving program goals" or if "additional evidence . . . cause[s] the Federal awarding agency to significantly question the feasibility of the intended objective of the award." *Id.* at 49,508–09.

50.     Under either version of the Uniform Guidance, for a federal agency to terminate an award on the basis that it no longer effectuates the program goals or agency priorities, the agency must "clearly and unambiguously" specify in the award that this ground—no longer effectuating program goals or agency priorities—is a basis for termination.

51.     Additionally, the Uniform Guidance allows for termination of an award that no longer effectuates program goals or agency priorities only if specific evidence shows the particular award no longer serves the intended program goals and agency priorities ***as determined at the time of the award*** and ***reflected in the award documents***.

52.     To terminate on this basis, USDA needs evidence not of its changed position, but that the awardee's project was failing to achieve the objectives the award originally set out to achieve.

53.     Further, a federal agency may suspend or terminate a grant award in part or in its entirety only after the agency "determines that noncompliance cannot be remedied by imposing specific conditions," such as "[r]equiring additional project monitoring," requiring the recipient to obtain technical or management assistance, or "[e]stablishing additional prior approvals." 2 C.F.R. §§ 200.339, 200.208(c). Termination is therefore limited to circumstances in which USDA took additional steps in an effort to achieve compliance and failed.

54.     As set out in more detail below, the Forest Service's termination of Arbor Day's Grant failed to follow any of these requirements.

**D. Executive Orders Directing Termination of Grant Awards**

55.    In the first days of the new administration, President Trump issued a series of executive orders broadly seeking to end all efforts, including federal awards, related to "equity"— such as any initiatives relating to DEI or Diversity, Equity, Inclusion, and Accessibility ("DEIA").

56.    On January 20, 2025, President Trump issued Executive Order No. 14151 "Ending Radical and Wasteful Government DEI Programs and Preferencing." 90 Fed. Reg. 8,339 (Jan. 29, 2025) ("First DEI EO"). The First DEI EO instructs the Director of OMB, Director of Office of Personnel Management, and Attorney General to "coordinate the termination of all discriminatory programs, including illegal DEI and 'diversity, equity, inclusion, and accessibility' (DEIA) mandates, policies, programs, preferences, and activities in the Federal Government, under whatever name they appear." *Id.* at 8,339. It also requires each federal agency head to "terminate, to the maximum extent allowed by law, all . . . 'equity-related' grants or contracts" within 60 days. *Id.*

57.    On January 21, 2025, President Trump issued Executive Order No. 14173 "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," 90 Fed. Reg. 8,633 (Jan. 31, 2025) ("Second DEI EO," together with the First DEI EO, "the DEI EOs"). The Second DEI EO requires the Director of OMB, with the assistance of the Attorney General, to "[t]erminate all 'diversity,' 'equity,' 'equitable decision-making,' 'equitable deployment of financial and technical assistance,' 'advancing equity,' and like mandates, requirements, programs, or activities, as appropriate." *Id.* at 8,634.

58.    The DEI EOs do not define key terms, including "equity-related," "programs promoting DEI," "illegal DEI," and "DEIA principles."

59.     On January 20, 2025, President Trump issued Executive Order No. 14154 "Unleashing American Energy," 90 Fed. Reg. 8,353 (Jan. 29, 2025) ("Energy EO"). Section 7 of the Energy EO, titled "Terminating the Green New Deal," directed all agencies to "immediately pause the disbursement of funds appropriated through the Inflation Reduction Act of 2022 (Public Law 117-169)" and to review their processes, policies, and programs "for consistency with the law and the policy outlined in section 2 of this order." 90 Fed. Reg. at 8,357.

### E.  Defendants' Termination of Arbor Day's Grant

60.     In an apparent effort to effectuate the President's sweeping Executive Orders as quickly as possible regardless of the legality of their conduct, Defendants adopted a policy, pattern, and practice of terminating awarded grants without individualized review, based on vague allegations that the projects were not aligned with the President's newly stated goals of eliminating funding for DEI and climate initiatives, and without any effort to determine whether the projects could be brought into line.

61.     On February 14, 2025, the USFS issued a termination notice for Arbor Day's Grant, stating that "award 24-CA-11132544-015 no longer effectuates agency priorities regarding diversity, equity, and inclusion programs and activities" and citing 2 C.F.R. § 200.340(a)(4) as the basis for termination.

62.     The termination letter contained no individualized analysis of Arbor Day's grant activities.

63.     The termination letter contained no explanation of how the Grant implemented or involved DEI initiatives.

64.     The termination letter identified no specific activities under the Grant that were allegedly problematic.

12

65. The termination letter provided no analysis of why the USDA believed that the October 1, 2024 version of 2 C.F.R. § 200.340 applies to the Grant.

66. The termination letter did not allege any noncompliance by Arbor Day with the terms or conditions of its Grant.

67. The termination letter did not provide any advance notice to Arbor Day.

68. The termination letter did not offer technical assistance or an opportunity to address any alleged problems prior to termination.

69. The selective pattern of UCFA pass-through grant terminations further demonstrates the arbitrary nature of Defendants' actions. On February 14, 2025, Arbor Day was one of two entities whose grant was terminated. The other entity was The 1890 Universities Foundation (Cooperative Agreement No. 24CA11132544006). Notably, two technology grants awarded to Arbor Day to develop reporting tools for the Urban and Community Trees Program were not terminated.

70. To Arbor Day's knowledge, during the month of April 2025, Defendants terminated three additional pass-through grants belonging to The Student Conservation Association (Cooperative Agreement No. 24CA11132544014), Urban Sustainability Directors Network (Cooperative Agreement No. 24CA11132544016), and The Corps Network (Cooperative Agreement No. 24CA11132544007).[1]

71. It is Arbor Day's understanding that the remaining UCFA pass-through grants, belonging to The Trust for Public Land, American Forests, Hispanic Access Foundation, The River

---

[1] The termination of the Urban Sustainability Directors Network UCFA grant, along with terminations of grants to four other entities under different programs, were enjoined by the D.C. District Court. *See Urban Sustainability Directors Network v. United States Department of Agriculture*, Civ. Act. No. 25-1775 (D.D.C. Aug. 14, 2025). It is Arbor Day's understanding that the Urban Sustainability Directors Network's UCFA pass-through grant is currently active.

Network, Justice Outside, Sustainable Forestry Initiative, and Groundwork USA, have not been terminated.

**F. Arbor Day's Exhaustion of Administrative Remedies**

72.    To the extent exhaustion was required, Arbor Day diligently pursued all available administrative remedies before filing this action. *See* 5 U.S.C. § 704.

73.    The time between the February 14, 2025 termination and the filing of this complaint is directly attributable to Arbor Day's good-faith efforts to resolve this matter through administrative channels.

74.    On March 11, 2025, Arbor Day submitted a response to the termination requesting reconsideration and alternative dispute resolution pursuant to Section N of the Grant.

75.    In that response, Arbor Day explained that its programs are focused on "planting and maintaining healthy urban forests, not about diversity, equity, and inclusion programs as commonly thought of" and that trees funded by the Grant "capture stormwater and replenish groundwater, help clean the air, and help cool air and surfaces in urban areas during heat waves."

76.    USFS provided no substantive response to Arbor Day's reconsideration request, and on August 12, 2025, only informed Arbor Day that it had "no additional information to share regarding the decision to terminate."

77.    On August 14, 2025, this Court issued its decision in *Urban Sustainability Directors Network v. United States Department of Agriculture*, Civ. Act. No. 25-1775 (D.D.C. Aug. 14, 2025), holding that USDA's termination of UCFA program grants under nearly identical circumstances was arbitrary and capricious and contrary to statute, and granting injunctive relief.

78.    Following this decision, on September 10, 2025, Arbor Day again demanded reinstatement of the Grant, arguing that its termination notice "contains even less detail and

justification for the termination than those sent to any of the other plaintiffs" in the *Urban Sustainability Directors Network* case.

79.    On September 29, 2025, the Forest Service responded that it was reviewing the *Urban Sustainability Directors Network* opinion and would communicate with affected partners.

80.    On January 28, 2026, the Forest Service advised Arbor Day that "the Agency determined the decision does not affect awards outside the case" and that "[t]he termination of the cooperative agreement with the Arbor Day Foundation is final."

81.    Arbor Day has now exhausted all available administrative remedies. The Forest Service's January 28, 2026 communication constitutes a final agency action, as it represents the culmination of the agency's decision-making process regarding the termination of the Grant.

82.    Any further pursuit of administrative remedies would be futile, as the Forest Service has unequivocally stated that the termination is final and has improperly refused to apply the reasoning of the *Urban Sustainability Directors Network* decision to Arbor Day's nearly identical circumstances.

### G.  The *Urban Sustainability Directors Network* Decision

83.    The *Urban Sustainability Directors Network* case involved grants under the same UCFA program funded by Section 23003(a)(2) of the IRA, administered by the same agency (USFS), and terminated using nearly identical form language.

84.    The Court held that the USDA's termination of UCFA program awards was arbitrary and capricious, finding that "a list of several potential reasons is as informative as no reason at all" and that "[t]here is, fatally, no satisfactory explanation establishing a rational connection between facts found and the choice made."

15

85.     The Court further held that the termination was contrary to statute because "defendants cannot terminate a grant for the very reason that the grant furthers the aims Congress explicitly instructed defendants to pursue" and that "an agency does not have the authority to 'decline to follow a statutory mandate or prohibition simply because of policy objections.'"

86.     Despite the Forest Service's January 28, 2026 position that "the decision does not affect awards outside the case," the legal reasoning in *Urban Sustainability Directors Network* is directly applicable to Arbor Day's termination. Arbor Day's termination letter uses nearly identical form language and suffers from the same inadequacies criticized by the Court.

87.     The Forest Service's refusal to extend the holdings of *Urban Sustainability Directors Network* to Arbor Day's nearly identical circumstances itself underscores the arbitrary nature of the termination.

## H.  Harm to Arbor Day

88.     The termination of the Grant has caused and continues to cause severe and irreparable harm to Arbor Day and to the forty-seven sub-recipients and municipalities across the country that depend on the Grant for urban forestry programs.

89.     The termination has halted tree planting and maintenance activities in communities across Montana, Utah, Nebraska, Florida, Georgia, North Carolina, Texas, Virginia, and other states.

90.     Sub-recipients have been forced to stop their urban forestry programs, causing disruption to ongoing projects and harm to the communities they serve.

91.     Arbor Day has been forced to divert time and resources away from its mission and other critical projects to address the unlawful termination.

16

92.     The harms to Arbor Day and its sub-recipients grow as time continues, with more disruption to operations and community programs on the horizon absent restoration of this grant funding.

93.     Arbor Day has no adequate remedy at law for these injuries. Monetary damages cannot adequately compensate for the loss of ongoing community forestry programs, the disruption to sub-recipient operations, or the environmental harms resulting from the cessation of tree planting activities.

**FIRST CAUSE OF ACTION**
**Violation of the Administrative Procedure Act – Agency Action Not In**
**Accordance with Law (Uniform Guidance, 2 C.F.R. § 400.1)**
**By Plaintiff Against All Defendants**

94.     The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

95.     Defendants are "agencies" under the APA, 5 U.S.C. § 551(1).

96.     The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A).

97.     The APA's reference to "law" in the phrase "not in accordance with law," "means, of course, any law, and not merely those laws that the agency itself is charged with administering." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003).

98.     When a federal agency has promulgated "[r]egulations with the force and effect of law," those regulations "supplement the bare bones" of federal statutes. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 268 (1954).

99.     "[A]n agency is bound by its own regulations," and therefore "if an agency action fails to comply with its regulations, that action may be set aside as arbitrary and capricious." *Erie Boulevard Hydropower, LP v. FERC*, 878 F.3d 258, 269 (D.C. Cir. 2017). In particular, "agencies

17

may not violate their own rules and regulations to the prejudice of others." *Battle v. F.A.A.*, 393 F.3d 1330, 1336 (D.C. Cir. 2005).

100.    Defendants' termination of Arbor Day's Grant is a final agency action. The termination resulted in the immediate cessation of project support and funding.

101.    Defendants' January 28, 2026 communication confirms the culmination of the government's decision-making process.

102.    Defendants' termination of Arbor Day's Grant pursuant to 2 C.F.R. § 200.340(a)(4) is not in accordance with law for several reasons, including:

   a.   Reliance on a provision, 2 C.F.R. § 200.340(a)(4), that does not apply to USDA awards issued before October 1, 2024, as Arbor Day's Grant was issued on December 18, 2023;

   b.   Failure to clearly and unambiguously list the grounds for termination in the conditions of the Award, as opposed to merely cross-referencing the relevant Code of Federal Regulations provision;

   c.   Terminating the Grant based on new USDA priorities regarding DEI, rather than any program goals or agency priorities as determined at the time of the Grant;

   d.   Failure to identify or rely on any specific evidence about Arbor Day's particular Grant that demonstrates the Grant no longer effectuates the priorities it was initially intended to serve; and

   e.   Failure to inform Arbor Day prior to termination of any noncompliance with the Grant's requirements and offer technical assistance or an opportunity to address any issue, as contemplated by 2 C.F.R. §§ 200.339, 200.208(c).

103.    For each of these reasons, Defendants' termination of Arbor Day's Grant violates USDA's own governing regulations. *See* 2 C.F.R. §§ 200.340, 400.1.

104.    Arbor Day has suffered and will continue to suffer irreparable harm if these actions are not declared unlawful, and Arbor Day has no adequate remedy in law.

105.    Arbor Day is entitled to have Defendants' actions set aside because they are in violation of law.

18

**SECOND CAUSE OF ACTION**
**Violation of the Administrative Procedure Act - Agency Action that is Arbitrary and**
**Capricious and an Abuse of Discretion**
**By Plaintiff Against All Defendants**

106.    The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

107.    The APA requires that a court "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

108.    An agency action is arbitrary and capricious if the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

109.    Moreover, when an agency changes its policy, if the "new policy rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests," the agency's failure to consider such factors "would be arbitrary and capricious." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

110.    The "reasoned explanation requirement . . . is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019).

111.    Defendants' termination of Arbor Day's Grant is arbitrary and capricious for each of the following reasons:

   a.  In the termination letter, Defendants did not provide a reasonable explanation for the termination, but instead broadly asserted that the Grant "no longer effectuates agency

19

priorities regarding diversity, equity, and inclusion programs and activities," without explaining why that is the case or how the Grant is allegedly inconsistent with its new priorities;

b. Defendants did not explain how their new priorities can be reconciled with the statutory mandate to fund urban forestry programs under the Cooperative Forestry Assistance Act and the Inflation Reduction Act;

c. Defendants did not explain how Arbor Day's Grant no longer effectuates USDA's priorities as determined at the time of the Grant, which is the proper standard by which to judge the Grant;

d. Defendants failed to consider how the termination of Arbor Day's Grant would impact the statutory purposes for which Congress appropriated the funds;

e. Defendants did not explain in the termination letter what specific evidence shows that Arbor Day's Grant is ineffective at achieving or no longer serves USDA's priorities as determined at the time of the Grant;

f. Defendants failed to consider Arbor Day's reliance interests, including its commitments to forty-seven sub-recipients and municipalities across the country;

g. Defendants failed to consider that Arbor Day's Grant is, in fact, focused on planting and maintaining healthy urban forests—activities that are consistent with USDA's core mission of managing National Forests and promoting American agriculture and rural prosperity; and

h. Defendants' termination letter failed to provide a reasoned explanation for its change in policy from its previous priorities.

112. As the Court held in *Urban Sustainability Directors Network*, "a list of several potential reasons is as informative as no reason at all" and "[t]here is, fatally, no satisfactory explanation establishing a rational connection between facts found and the choice made."

113. Defendants' unlawful action has caused and will continue to cause irreparable harm absent a declaration that this conduct is unlawful and injunctive relief setting Defendants' actions aside, and Arbor Day has no adequate remedy in law.

114. Arbor Day is entitled to have Defendants' actions set aside because they are in violation of law.

**THIRD CAUSE OF ACTION**
**Violation of the Administrative Procedure Act - Agency Action Not in Accordance with Law (Cooperative Forestry Assistance Act of 1978 and Inflation Reduction Act of 2022) By Plaintiff Against All Defendants**

115.    The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

116.    Defendants' termination of Arbor Day's UCFA program Grant is also not in accordance with law and thus violates the APA because the stated basis for termination directly contravenes Congress's statutory mandate for funding the program.

117.    Congress intended awards under the UCFA program to implement tree planting programs that contribute to reducing global warming trends by reducing carbon dioxide emissions, mitigating the heat island effect, and reducing energy consumption. *See* 16 U.S.C. § 2105.

118.    Defendants are required to carry out this program as statutorily mandated and to distribute the funds that Congress appropriated for the program.

119.    Consistent with these statutory duties, Defendants initially obligated these funds to Arbor Day following a rigorous, regulated, and competitive grantmaking process.

120.    Defendants' stated justification for the termination of Arbor Day's Grant was that the Grant "no longer effectuates agency priorities regarding diversity, equity, and inclusion programs and activities."

121.    USDA and USFS's new priority of defunding awards based on alleged connections to DEI, however, is at odds with Congress's mandates that USDA fund the UCFA program, and that those funds go towards programs that address climate and environmental needs in urban communities.

21

122. As the Court held in *Urban Sustainability Directors Network*, "defendants cannot terminate a grant for the very reason that the grant furthers the aims Congress explicitly instructed defendants to pursue."

123. Similarly here, Congress specifically appropriated funds under Section 23003(a)(2) of the IRA for urban forestry programs, including projects working "to support disadvantaged communities experiencing low tree canopy." Defendants cannot characterize Arbor Day's tree-planting programs as DEI initiatives and then terminate them on that basis, when those programs directly advance the statutory purposes Congress directed.

124. Accordingly, Defendants' termination of Arbor Day's UCFA program Grant on the basis that it relates to DEI is not in accordance with the statutory requirements for the program and thus violates the APA.

125. USDA and USFS's unlawful actions have caused and will continue to cause irreparable harm absent a declaration that this conduct is unlawful and injunctive relief setting these actions aside, and Arbor Day has no adequate remedy in law.

126. Arbor Day is entitled to have Defendants' actions set aside because they are in violation of law.

### FOURTH CAUSE OF ACTION
**Violation of Separation of Powers**
**By Plaintiff Against All Defendants**

127. The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

128. Article I, Section 1 of the United States Constitution states that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." U.S. Const. Art. I, § 1.

22

129.    "The Framers viewed the legislative power as a special threat to individual liberty, so they divided that power to ensure that 'differences of opinion' and the 'jarrings of parties' would 'promote deliberation and circumspection' and 'check excesses in the majority.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 223 (2020).

130.    The Constitution vests the right to appropriate funds exclusively with Congress. The Executive Branch has no discretion to withhold funds validly appropriated by Congress. U.S. Const. Art. I, § 9, cl. 7; *see also Train v. City of New York*, 420 U.S. 35, 45–47 (1975).

131.    "[W]henever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen*, 594 U.S. 220, 245 (2021).

132.    Congress enacted the UCFA program and appropriated $1.5 billion in funding for that program to serve the enumerated purposes described above.

133.    Defendants' termination of Arbor Day's Grant issued pursuant to IRA funding for the UCFA program violates the separation of powers because the basis for terminating the Grant directly contravenes the statutory mandate under which the funds were appropriated by Congress.

134.    Arbor Day is entitled to have these actions set aside because they are a violation of law.

## FIFTH CAUSE OF ACTION
### *Ultra Vires* Action
### By Plaintiff Against All Defendants

135.    The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

136.    Defendants are acting *ultra vires* in seeking to terminate Arbor Day's UCFA program Grant. *See Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689–91 (1949); *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963).

23

137.    USDA and USFS have no statutory authority to terminate awards for reasons wholly inconsistent with the IRA and the Cooperative Forestry Assistance Act of 1978.

138.    Accordingly, Defendants' termination of Arbor Day's UCFA program Grant is an unlawful *ultra vires* action, and Arbor Day is entitled to have this unlawful action set aside.

## SIXTH CAUSE OF ACTION
### Violation of Due Process Clause
### By Plaintiff Against All Defendants

139.    The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

140.    The Fifth Amendment to the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

141.    Arbor Day has a constitutionally protected interest in the USDA funding it applied for, was awarded, and relied on. Arbor Day has expended significant resources to set up its programs and projects in reliance on the Grant.

142.    Arbor Day's interest in the Grant is established and governed by the acceptance of its application by USDA. *See, e.g., Cnty. of Santa Clara v. Trump*, 275 F. Supp. 3d 1196, 1218 (N.D. Cal. 2017), *aff'd in part, vacated in part, remanded sub nom, City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225 (9th Cir. 2018).

143.    Because Defendants have adopted procedural protections for awardees through their own regulations, Arbor Day also has a constitutionally protected right to scrupulous compliance with the regulations.

144.    Arbor Day was entitled to reasonable notice and due process before Defendants summarily terminated its grant funding.

24

145.    Arbor Day did not receive prior notice before Defendants summarily terminated its Grant and ceased disbursing funds. Nor was Arbor Day provided a hearing or other opportunity to challenge the termination of its Grant prior to the termination.

146.    The termination deprived Arbor Day of its interest in its funding without the procedural due process rights to which it is constitutionally entitled.

147.    Arbor Day has had its operations disrupted as a result, including disruption to sub-recipient programs, damage to relationships with community beneficiaries, and harm to its organizational mission and operations.

148.    Thus, Defendants' termination of Arbor Day's Grant in the manner described herein violates the Fifth Amendment Due Process Clause.

149.    Arbor Day is entitled to have these unlawful actions set aside.

**SEVENTH CAUSE OF ACTION**
**Violation of Due Process Clause — Void for Vagueness**
**By Plaintiff Against All Defendants**

150.    The allegations made in all preceding paragraphs are realleged and incorporated by reference herein.

151.    The Fifth Amendment to the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law.

152.    A fundamental aspect of due process is that government-imposed obligations must be stated with sufficient clarity to provide fair notice and prevent arbitrary enforcement.

153.    Government regulatory enforcement is void for vagueness if it (1) does not provide a person of ordinary intelligence fair notice of what is prohibited or (2) risks arbitrary application. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972); *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

154. Open-ended regulatory terminology that allows for "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings" violates due process. *United States v. Williams*, 553 U.S. 285, 306 (2008); *Coates v. City of Cincinnati*, 402 U.S. 611, 611–14 (1971).

155. Arbor Day has a constitutionally protected interest in the Grant funding it applied for, was awarded, and relied on. Arbor Day also has a constitutionally protected interest in Defendants' scrupulous compliance with their own regulations.

156. Defendants' application of 2 C.F.R. § 200.340(a)(4) to Arbor Day is unconstitutionally vague and constitutes an arbitrary exercise of authority.

157. Defendants' termination letter summarily asserts that the Grant "no longer effectuates agency priorities regarding diversity, equity, and inclusion programs and activities."

158. The terms "effectuate," "priorities," and the characterization of Arbor Day's tree-planting programs as "diversity, equity, and inclusion programs and activities" are not defined in the termination letter, the Award, the law, or the regulations, and are unconstitutionally vague.

159. Moreover, the termination letter is unconstitutionally vague because it is based on priorities regarding DEI that were never previously identified for awardees and were not contained in any guidance, law, or regulation at the time of the Grant.

160. As a result, Defendants' termination of Arbor Day's Grant in the manner described herein is unconstitutionally vague, thereby violating the Fifth Amendment Due Process Clause.

161. Arbor Day is entitled to have these unlawful actions set aside.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.      Issue a declaration that Defendants' termination of Arbor Day's Urban and Community Trees cooperative agreement (Agreement No. 24-CA-11132544-015) is unlawful;

2.      Vacate and set aside the termination of Arbor Day's Grant;

3.      Order Defendants to return to the status quo in relation to Arbor Day's Grant, including the restoration of all funding and the resumption of all performance obligations;

4.      Preliminarily and permanently enjoin Defendants from giving effect to or maintaining the termination of Arbor Day's Grant;

5.      Preliminarily and permanently enjoin Defendants from unlawfully re-terminating Arbor Day's Grant reinstated pursuant to the Court's order;

6.      Award Plaintiff its reasonable fees, costs, and expenses, including attorneys' fees, pursuant to 28 U.S.C. § 2412; and

7.      Grant any and all other such relief as the Court may deem appropriate.


Dated this 20th day of May 2026.

Respectfully submitted,

BASS, BERRY & SIMS PLC

/s/ *Denise Barnes*
Denise Barnes (DC Bar# 999834)
Richard W. Arnholt (DC Bar# 489163)
Adam R. Briscoe (DC Bar# 1657531)
1201 Pennsylvania Ave NW, Suite 300
Washington, DC 20004
(202) 827-2950
Denise.Barnes@bassberry.com
RArnholt@bassberry.com
Adam.Briscoe@bassberry.com


Margaret V. Dodson (*pro hac vice forthcoming*)
21 Platform Way South, Suite 3500
Nashville, TN 37204
(615) 742-7712
Margaret.dodson@bassberry.com

*Counsel for Plaintiff The National Arbor Day Foundation*